IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEON W. WRIGHT, )
)
Plaintiff, )
)
vs. )  Case No. 11-CV-01954
)
CBS CORPORATION, )
)
Defendant. )

## CBS CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW

COMES NOW CBS Corporation ("Westinghouse")[1], pursuant to Fed. R. Civ. P. 50(a), seeking a judgment in its favor as a matter of law. Plaintiff alleges that he was injured by asbestos exposure related to the construction of the Unit 2 turbine-generator at the Zion Nuclear Power Station ("Zion"). While Westinghouse indisputably was a designer and builder of Zion's Unit 2 turbine-generator, it is entitled to a judgment as a matter of law as to all claims stated against it for two reasons.

First, even when the evidence and all reasonable inferences arising therefrom are construed in Plaintiff's favor, he has not raised a genuine issue as to whether asbestos exposure associated with Zion's Unit 2 turbine-generator caused him any injury. As proof of such Westinghouse-specific causation is an essential element of each of his claims, those claims have failed as a matter of law.

Second, while Plaintiff's claims allegedly arise from Westinghouse's design and/or construction of an improvement to real property (*i.e.*, Zion's Unit 2 turbine-generator), it is undisputed that he did not pursue those claims within ten years of the substantial completion of

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

that improvement-related work. Thus, Plaintiff's claims are barred as a matter of law by Illinois' construction statute of repose, 735 ILCS 5/13-214(b).

For each of these separate and distinct reasons, there is no remaining genuine issue as to Westinghouse's purported liability. Thus, Westinghouse asks that a judgment be entered in its favor as a matter of law as to all claims stated against it and that it be afforded all other relief deemed appropriate by this Court.

## Standards Governing Rule 50(a) Motions

Fed. R. Civ. P. 50(a) provides:

(a) Judgment as a Matter of Law.

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > **(A)** resolve the issue against the party; and
> >
> > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> (2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Thus, as summarized in *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007):

> Under Rule 50, a court should grant judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . . The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment. Thus, we must view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the party against whom judgment was granted.

(*citing Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886–87 (7th Cir. 2001)). Stated differently, the standard for granting a Rule 50(a) motion closely mirrors the standard applicable to Fed. R. Civ. P. 56 summary judgment motions as "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Forrest v. Prine*, 620 F.3d 739, 743 (7th Cir. 2010) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-51 (1986)).

While a court considering a motion for a judgment as a matter of law must construe the evidence and any reasonable inferences arising therefrom in the non-movant's favor, it may "disregard testimony that is 'opposed to the laws of nature or undisputed physical or scientific facts.'" *Whitehead v. Bond*, 782 F. Supp. 2d 685, 689 (N.D. Ill. 2011) (quoting 9B, Charles Alan Aright & Arthur R. Miller, *Federal Practice and Procedure*, § 2527 (3d ed. Supp. 2010)). In short, where a witness' testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," that testimony should be disregarded for purposes of Rule 50(a). *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (*quoting, Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

## Argument

I.  **Plaintiff's proof of Westinghouse-specific causation has failed as a matter of law, as no reasonable jury could find that exposure to Westinghouse-attributable asbestos caused any injury on his part.**

As noted in *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 266, 560 N.E.2d 324 (1990), "[t]he concept that liability may be imposed based merely on a breach of duty, without causation being established, has long been rejected in American tort law." Thus, a personal injury plaintiff bears the burden of establishing by a preponderance of the evidence that the defendant was both a cause-in-fact and a proximate cause of the claimed injury. *Nolan v. Weil-McLain*, 233 Ill. 2d

416, 431, 910 N.E.2d 549 (2009); *Thacker v. UNR Indus.*, 151 Ill. 2d 343, 354, 603 N.E.2d 449 (1992); *Wehmeier v. UNR Indus.*, 213 Ill. App. 3d 6, 27, 572 N.E.2d 320, 335 (4th Dist. 1991).

As to "causation in fact," a plaintiff must establish a "reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered." *Wehmeier*, 213 Ill. App. 3d at 27. Such a "reasonable connection" can be proven by showing either: 1) that, "but for" the defendant's conduct, the injury would not have occurred; or 2) that the defendant's conduct was otherwise a "material element and a substantial factor" in causing the harm. *Nolan*, 233 Ill. 2d at 431; *Thacker*, 151 Ill. 2d at 354-55; *Wehmeier*, 213 Ill. App. 3d at 27-28. Conversely, a showing of "reasonable connection" is *not* made upon evidence that a defendant's conduct merely created or increased the plaintiff's risk of harm absent further proof that the defendant's conduct was an actual and substantial factor in causing the injury. *Smith*, 137 Ill. 2d at 266.

Illinois law has refined the application of these principles where a plaintiff alleges that exposure to asbestos attributable to a defendant was a substantial factor in causing injury. In such cases, the plaintiff must prove both "general" or "medical" causation (*i.e.*, that the injury is asbestos-related) *and* "specific" causation (*i.e.*, that exposure to asbestos attributable to the defendant caused the injury). *See, e.g., Johnson v. Owens-Corning Fiberglass Corp.*, 284 Ill. App. 3d 669, 673, 672 N.E.2d 885(3rd Dist. 1996); *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 1091, 549 N.E.2d 881 (1st Dist. 1989). *See also, e.g., Schultz v. Keene Corp.*, 729 F. Supp. 609, 613 (N.D. Ill. 1990); *Sliwinski v. Keene Corp.*, 1990 WL 133443 at *1 (N.D. Ill. Sept. 13, 1990). Stated differently, a jury question is *not* presented as to a defendant's liability for even a proven asbestos-related injury absent proof of causative exposure to asbestos attributable to that defendant. *Webber v. Armstrong World Indus.*, 235 Ill. App. 3d 790, 795, 601 N.E.2d 286 (4th

Dist. 1992). The sufficiency of a plaintiff's proof in this regard turns on a well-established two-step analysis.

First, the plaintiff must prove exposure to defendant-attributable respirable asbestos dust. Such a threshold showing is necessarily deficient where a plaintiff has proven exposure to some product or item attributable to the defendant, but has failed to establish that the material actually contained asbestos and emitted respirable asbestos dust. *Johnson*, 284 Ill. App. 3d at 679. Additionally, even this threshold proof of actual exposure demands more than mere evidence that defendant-attributable asbestos was located somewhere in the plaintiff's worksite; the plaintiff must prove he was in close proximity to the defendant-specific asbestos when it was used in such a way as to create respirable asbestos dust. *Id.*, at 677-79. *See also, Schultz*, 729 F. Supp. at 613-14 (*citing, Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986)); *Sliwinski*, 1990 WL 133443 at *1.

Second, even if a plaintiff can prove some amount of actual exposure to defendant-attributable asbestos, Illinois law demands further proof by a preponderance of the evidence that the exposure occurred with such frequency, regularity and proximity that – even when measured against all of the plaintiff's other asbestos exposures – it can rationally be viewed as a substantial factor in causing the injury. *Nolan*, 233 Ill. 2d at 431-36; *Thacker*, 151 Ill. 2d at 359 and 364 (noting that, to satisfy this test, "there must be some evidence that the defendant's asbestos was put to 'frequent' use in the [plaintiff's worksite] in 'proximity' to where the [plaintiff] 'regularly' worked"); *Johnson*, 284 Ill. App. 3d at 676-77. In this case, however, questions of "regularity" and "frequency" have been rendered largely superfluous, as Plaintiff has not raised a genuine issue of fact as to his proximate exposure to Westinghouse-attributable asbestos on even a single occasion.

A.  **Plaintiff's testimony regarding his purported proximity to the construction of Zion's Unit 2 turbine-generator is so manifestly contrary to the indisputable evidence that it could not be credited by any reasonable jury.**

In this case, the only evidence offered to prove proximity is Plaintiff's own testimony that his work in a utility tunnel during the construction of Zion's Unit 2 occasionally brought him within 100 to 200 feet of the Westinghouse turbine-generator because that tunnel connected directly to the room in which the turbine-generator was located. That testimony is wholly incompatible with the physical fact, established by the undisputed evidence in this case, that the utility tunnel in which Plaintiff claims to have worked did *not* connect to the room in which Zion's Unit 2 turbine-generator is located. Thus, Plaintiff's testimony must be disregarded for purposes of Westinghouse's Rule 50(a) motion. *Seshadri*, 130 F.3d at 802; *Whitehead*, 782 F. Supp. 2d at 689. As such, and as the record is devoid of any other evidence placing Plaintiff near a Westinghouse product (asbestos-containing or otherwise), his proof of Westinghouse-specific causation has failed as a matter of law.

B.  **Even if Plaintiff had raised a jury question as to his proximity to Zion's Unit 2 turbine-generator, he has not offered any admissible evidence that the insulation (or any other material) then being used to build that improvement was asbestos-containing.**

As noted above, an essential element of Plaintiff's proof is evidence that the product or object attributable to Westinghouse was, in fact, asbestos-containing. *Johnson*, 284 Ill. App. 3d at 679. Accordingly, even evidence that Westinghouse participated in turbine construction work in Plaintiff's proximity coupled with evidence that such construction work sometimes involved the use of asbestos would be insufficient to give rise to a genuine issue as to Westinghouse-specific causation without a further showing that asbestos was being used in the construction of Zion's Unit 2 turbine-generator, specifically, while Plaintiff was in the area. *Compare, Floyd v.*

*Air & Liquid Sys. Corp.*, 2012 WL 975696 at *1, n.1 (E.D. Pa. Feb. 10, 2012) (applying California law).

In this case, even if this Court could ignore the physical impossibility of Plaintiff's testimony that his work brought him into relative proximity to the construction of Zion's Unit 2 turbine-generator, he has not offered any evidence which – even when construed as favorably to him as reasonably possible – could establish that asbestos-containing materials were being used at that time in such a way as to expose him to respirable asbestos dust. Quite the contrary, the undisputed evidence shows that the insulation used in constructing Zion's Unit 2 turbine-generator was *asbestos-free*. This failure of Plaintiff's proof constitutes a separate basis for a judgment in Westinghouse's favor as a matter of law.

> C. **Plaintiff's purported contact with Westinghouse-attributable asbestos did not occur with sufficient frequency, proximity and regularity to give rise to even a genuine issue of Westinghouse-specific causation, particularly given his admitted substantial exposures to asbestos from other sources.**

Even ignoring both the physical impossibility of Plaintiff's alleged contact with Zion's Unit 2 turbine-generator and his lack of proof of asbestos content as to that improvement, the extent of that purported "contact," even based on Plaintiff's own estimation, is that – over a nine month span in approximately 1973 – he was intermittently within 100 to 200 feet of the turbine-generator. Based on his further estimation that such "contact" would have occurred only once or twice per week, with each such instance lasting only two or three hours, the total amount of time Plaintiff purportedly spent within 100 to 200 feet of Zion's Unit 2 turbine-generator totals, at most, 234 hours (and, possibly, as little as 78 hours) within the broader context of his alleged decades-long occupational asbestos exposure. Given these facts, any purported "exposure" associated with Zion's Unit 2 turbine-generator would be, at most, *de minimis* in comparison to Plaintiff's total asbestos exposure dose. Accordingly, even if a genuine issue been raised as to

7

such exposure, Plaintiff's proof of Westinghouse-specific causation would still fail as a matter of law. *Nolan*, 233 Ill. 2d at 431-36; *Thacker*, 151 Ill. 2d at 359 and 364; *Johnson*, 284 Ill. App. 3d at 676-77.

**II.    Plaintiff's claims against Westinghouse are barred as a matter of law by (735 ILCS 5/13-214(b) as they relate to Westinghouse's design and/or construction of an improvement yet were not filed with ten years of the completion of that work.**

A determination of the timeliness of a claim can by made by a court as a matter of law where the undisputed facts show that an applicable limitations or repose period lapsed before suit was filed, giving rise to an "unassailable affirmative defense under Illinois law." *Hager v. Crepaco, Inc.*, 980 F. Supp. 292, 294 (N.D. Ill. 1997). *See, Healy v. Owens-Illinois, Inc.*, 359 Ill. App. 3d 186, 833 N.E.2d 906(1st Dist. 2005); *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 656 N.E.2d 44(1st Dist. 1995); *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 896, 588 N.E.2d 1193 (4th Dist. 1992). Further, "[w]here . . . a defendant has produced sufficient evidence which would entitle it to judgment as a matter of law on a statute of repose defense, the *plaintiff* has the burden of proving that any exception to that law applies." *Ocasek*, 275 Ill. App. 3d at 632 (emphasis added); *Crisman v. Peoria & Pekin Union Ry. Co.*, 846 F. Supp. 716, 719 (C.D. Ill. 1994).

As to the facts in this case, a period of absolute repose is established for construction-related claims involving improvements by 735 ILCS 5/13-214(b). *See, King v. Paul J. Krez Co.*, 323 Ill. App. 3d 532, 535, 752 N.E.2d 605 (1st Dist. 2001). By its express terms, § 13-214(b) bars all claims based on a defendant's "design, planning, supervision, observation or management of construction" or actual construction of an improvement once ten years have lapsed since the date on which the defendant's construction-related acts or omissions occurred.

Thus, repose is plainly triggered after ten years[2] whenever: 1) "the item at issue is an improvement to real property"; and 2) "the defendant's actions fall within the scope of activities enumerated in the statute." *MBA Enters. v. Northern Ill. Gas Co.*, 307 Ill. App. 3d 285, 287 (3rd Dist. 1999). The evidence unequivocally establishes both of these prongs as to Westinghouse.

### A. Zion's Unit 2 turbine-generator was an improvement to real property.

Stated simply, an "improvement" is "an addition to real property which amounts to more than a mere repair or replacement and which substantially enhances the value of the property." *Litchfield Community Unit Sch. Dist. No. 12 v. Specialty Waste Servs.*, 325 Ill. App. 3d 164, 166, 757 N.E.2d 641 (5th Dist. 2001). *See also, St. Louis v. Rockwell Graphic Sys.*, 153 Ill. 2d 1, 4, 605 N.E.2d 555 (1992) (*citing, Black's Law Dictionary*, p. 682 (5th ed. 1979)). The determination of whether an item is an "improvement" as contemplated by § 13-214(b), while necessarily grounded in fact, is a question of law for the court. *See, e.g., St. Louis*, 153 Ill. 2d at 3; *Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 266 (7th Cir. 1994). In making this determination, the court should focus on several factors including whether the structure was intended to be temporary or permanent; whether it constituted "an integral component of the overall system;" whether its construction increased the value of the property; and whether it enhanced the owner's use of the property. *St. Louis*, 153 Ill. 2d at 4-5 (collecting cases). In this case, Westinghouse's custom-design and construction of a massive turbine-generator necessary to the intended operation of a nuclear power plant indisputably constituted an improvement.[3] The testimony of

---

[2] It is undisputed that the construction of Zion's Unit 2 turbine-generator was completed more than ten years before the filing of Plaintiff's suit in this case.

[3] Westinghouse notes that at least one Illinois court has specifically held that turbines are improvements for purposes of repose in the specific context of asbestos-related litigation. On August 18, 2009, the Circuit Court for Cook County, Illinois issued a summary judgment order in the *Jacqueline Kenney* matter, Case No. 03-L-16219, holding that asbestos-related claims involving power plant turbines were barred by repose as the turbines were "permanent as they became integral components of the overall facility, increased the value of the property, and increased the use of the land." For the Court's convenience, a copy of the *Jacqueline Kenney* summary judgment order is attached hereto as "Exhibit A."

9

Doug Ware, and the documents that he produced, confirm the permanency of the turbines at Zion:

> A.) Turbine Generator Unit 1 at Zion became operational on June 28, 1973 and weighed at least 4930 tons; was 206 feet long, 102 feet wide, and 25 feet high; Turbine Generator Unit 2 became operational on December 26, 1973 and was the same size as Unit 1.
>
> B.) Before a steam turbine-generator unit, such as the ones at the Zion Station were constructed, piles were driven deep into the earth for support and special foundations were dug and filled with concrete. Each steam turbine-generator unit was then constructed on the foundations and anchored or attached, at numerous points.
>
> C.) After these steam turbine generating units were constructed, they were permanent and integral parts of the powerhouse. The powerhouse would not function without the turbine generators.

**B. Westinghouse's design and construction of Zion's Unit 2 turbine-generator are precisely the types of activities governed by the repose statute.**

To claim the protection of § 13-214(b), a defendant's allegedly tortuous conduct must have occurred in the context of its performance of one or more of the construction-related functions enumerated therein. *King*, 323 Ill. App. 3d at 535. If so, the defendant is entitled to the absolute repose afforded by that statute. *Id.*, at 537 (*quoting, Skinner v. Hellmuth, Obata & Kassabaum*, 114 Ill. 2d 252, 261, 500 N.E.2d 34(1986)). Relative to the undisputed facts of this case, the Illinois Court of Appeals has ruled that even the mere installation of asbestos-containing materials such as insulation as part of the larger construction of an improvement is protected activity for purposes of § 13-214(b). *King*, 323 Ill. App. 3d at 536; *Risch v. Paul J. Krez Co.*, 287 Ill. App. 3d 194, 196, 678 N.E.2d 44(1st Dist. 1997). Clearly, this rule of law is not altered by the mere fact that a contractor may have furnished or supplied the materials used on a "labor and materials" basis, particularly where – as here – it was not a manufacturer or retail distributor of those materials and was, instead, required to purchase them from others for use on

the project. *See*, *King*, 323 Ill. App. 3d at 538; *Risch*, 287 Ill. App. 3d at 198-99. *Cf.*, *J.M. Foster, Inc. v. Spriggs*, 789 N.E.2d 526, 531-32 (Ind. App. 2003) (holding that a contractor who merely purchased, furnished and used materials manufactured and sold by others in performing its own construction work could not be held liable as a product "seller" outside the scope of Indiana's construction statute of repose); *Geist v. Sequoia Ventures, Inc.*, 83 Cal. App. 4th 300, 306 (2000) (considering the analogous provisions of Montana's construction statute of repose and holding, for purposes of the statute of repose, that "a general contractor's *use* of a product in a construction project does not render the contractor a supplier of the product") (emphasis in original).[4] In short, as the undisputed evidence reflects both that Westinghouse played a role in custom-designing Zion's Unit 2 turbine-generator and in supervising the on-site construction of that improvement, Westinghouse is plainly a protected party for purposes of Illinois'

---

[4] Even as to manufacturers and retailers of asbestos-containing building materials, there is a split of authority as to whether such parties who personally participate in a construction project can face "seller" liability outside the scope of § 214(b). The First District of the Illinois Court of Appeals interprets § 214(b) as reaching even claims against manufacturers or distributors who (in addition to manufacturing, selling or marketing their products to the public) directly participate in an improvement's on-site construction. *King.*, 323 Ill. App. 3d at 540. A different conclusion was reached in *Boldini v. Owens Corning*, 318 Ill. App. 3d 1167, ___ N.E.2d ___ (4th Dist. 2001), with the Fourth District holding that an insulation distributor who had both sold and installed the insulation used at the plaintiff's worksite could not, despite its construction-related activities, invoke § 214(b) as to claims arising from its non-site-specific marketing and distribution activities. *Id.*, at 1173. Arguably, a similar holding was reached in *Kreuger v. A.P. Green Refractories Co.*, 283 Ill. App. 3d 300, 669 N.E.2d 947 (3d Dist. 1996), although the rationale underlying *Kreuger* is difficult to discern. Neither *King* nor *Boldini*, however, addresses a situation in which a contractor purchases the materials used in its construction work and then supplies those materials on a "labor and materials" basis. In this case, it is undisputed that Westinghouse did not "manufacture" or "sell" the insulation used in constructing Zion's Unit 2 turbine-generator; rather, Westinghouse procured the supply and installation of such insulation through a sub-contractor. As Mr. Doug Ware testified, Westinghouse has never been in the business of manufacturing and selling insulation to third-parties unrelated to Westinghouse's own turbine erection work. Stated simply, no Illinois appellate authority recognizes a "seller" exception to § 214(b) as to a mere purchaser and user of building materials that were manufactured and sold by other parties. *Cf.*, *Zielinski v. Miller*, 277 Ill. App. 3d 735, 741, 660 N.E.2d 1289 (3rd Dist. 1995) (holding that a masonry subcontract, under which the subcontractor was to furnish and install the bricks used in constructing a home, was not a contract for the sale of goods). The lack of any basis on which to hold Westinghouse liable for Plaintiff's injury as a "seller" or "supplier" of asbestos-containing insulation beyond the reach of the repose statute is especially pronounced given that the supply and installation of the insulation was procured through a subcontractor. Under such circumstances, Westinghouse certainly cannot be considered a "seller" or "supplier." *Compare*, *Eagen v. Hanischfeger Corp.*, 2 Conn. L. Rptr. 662, 1990 WL 282606 at *1 (Conn. Super. Nov. 5, 1990).

construction statute of repose. Westinghouse was a designer and builder of the improvement to real property, as the following facts demonstrate:

      A.)    Westinghouse custom-designed these units according to specifications provided by Sargent & Lundy.

      B.)    Westinghouse created engineering drawings for the placement and thicknesses of the various insulation materials specified by Commonwealth Edison's engineer, Sargent & Lundy, to be applied to the turbines at Zion.

      C.)    Westinghouse individually designed all aspects of these steam turbine generating units to meet the specific needs of Commonwealth Edison Company, to fit the structure housing the unit, and to interface, as necessary, with the other major components at the Zion Station.

      D.)    Westinghouse was also the on-site erector of the turbines at Zion.

## Conclusion

For the reasons set forth herein, Plaintiff's claims against Westinghouse have failed as a matter of law as no reasonable jury could find, based on the evidence of this case, that exposure to Westinghouse-attributable asbestos was a cause of any injury on Plaintiff's part. Additionally, the undisputed evidence establishes that Plaintiff's claims against Westinghouse are also barred as a matter of law by Illinois' construction statute of repose. For each of these reasons, Westinghouse is entitled to a judgment in its favor as a matter of law pursuant to Fed. R. Civ. P. 50(a).

Respectfully submitted,

**FOLEY & MANSFIELD, P.L.L.P.**

_____
Daniel G. Donahue,    # 6193558
Jacob D. Sawyer      # 6281475
55 W. Monroe St., Ste. 3430
Chicago, IL 60603
(312) 254-3801
(312) 254-3801 [FAX]

**Attorneys for CBS Corporation**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

JACQUELINE KENNEY, Individually and as )
Administrator for the Estate of )
JERRY KENNEY, Deceased )
)
    Plaintiff, )
)
    vs. )   No. 03 L 16219
)
COMMONWEALTH EDISON COMPANY, )
et al, )
)
    Defendants. )

## ORDER

This cause, coming to be heard before the Court on Defendant Commonwealth Edison's Motion for Summary Judgment, the Court having considered the arguments of the parties, hereby finds as follows:

### Background

This matter arises out of claims brought by Plaintiff, Jacqueline Kenney, on behalf of her deceased husband for injuries he sustained and suffered due to asbestos exposure. Plaintiff filed this action against many defendants, including Commonwealth Edison ("ComEd"). With regard to ComEd, Plaintiff alleges that decedent was exposed to asbestos while he worked as a construction crane operator for Henry Pratt and Company at five different ComEd power stations. At each ComEd facility, decedent operated cranes to unload and raise construction materials, allegedly covered in asbestos. During this construction, ComEd had on-site engineers who participated in and supervised the construction activities at all five facilities at which Kenney worked.

Defendant ComEd moves for Summary Judgment based on the Illinois Construction Statute of Repose. For the following reasons, ComEd's Motion for Summary Judgment is GRANTED.



1

## Discussion

Summary judgment is an appropriate disposition when the "pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005. Disposition by summary judgment is "a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90 (1992), citing *Purtill v. Hess*, 111 Ill.2d 229 (1986). In determining whether summary judgment is appropriate, the court will look at the evidence in the light most favorable to the non-moving party. *Id.*

Defendant asserts that Plaintiff's claim is barred by Illinois Construction Statute of Repose, 735 ILCS 5/13-214 ("repose statute"). Section (b) of the statue reads in relevant part:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

735 ILCS 5/13-214(b). Whether a plaintiff's allegations fall within the construction statute of repose is a two-part test. First, a court must determine if there was an improvement to real property. Second, a court must consider whether the defendant participated in the design, planning, observation or management of construction, or construction of an improvement to real property. *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill.2d 1 (1992) (reasoning there were two issues to consider – whether the printing press was an improvement to real property and whether the defendant fell within the scope of section 13-214). *See also People v. Asbestospray*, 247 Ill. App. 3d 258, 266 (4th Dist. 1993) (according to *St. Louis*, finding that a product constitutes an improvement to real property does not automatically bring the manufacturer within the statute unless a court also finds that the manufacturer performed some role related to the construction site beyond providing standard products).

First, the Court finds that the construction was an improvement to real property. "Improvement" is defined as a valuable addition made to property, usually real estate, or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further

2

purposes. *St. Louis* 153 Ill.2d at 5. Relevant criteria for determining what constitutes an "improvement to real property" include: whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced. *Id.*

In this case, the construction projects constituted improvements to real property. The installation of turbines, boilers, piping, and other equipment were permanent as they became integral components of the overall facility, increased the value of the property, and increased the use of the land. Therefore, the improvement to land requirement is met.

Second, the Court finds that ComEd did participate in one of the enumerated activities under the statute. In *Blinderman Constr. Co. v. Metro. Water Reclamation Dist*, 325 Ill. App. 3d 361 (1st Dist. 2001), the appellate court found that the defendant's activities fell within the construction statute of repose because it prepared plan specifications and drawings for the project and was authorized to order changes. ComEd, through use of on-site engineers, oversaw the construction activities at all five facilities at which decedent worked. ComEd, through its corporate representatives, participated in the design, planning, and management of the construction activities at the different sites. Specifically, the engineers employed by ComEd had to approve shop drawings of the construction before work would begin.

In conclusion, because Plaintiff failed to file within 10 years to her husband's exposure to asbestos, her claim against ComEd is barred.

**IT IS HEREBY ORDERED:**

Defendant ComEd's Motion for Summary Judgment is granted.

ENTER:

ENTERED
JUDGE WILLIAM D. MADDUX-1559
AUG 1 8 2009
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge William D. Maddux

3